# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| **TIANNA DOXY** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **No. 2:08 CV 283** |
| | ) | **(arising from No. 2:05 CR 25)** |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |

## OPINION AND ORDER

On September 26, 2008, the Clerk of the Court received a motion pursuant to 28

U.S.C. § 2255 from Tianna Doxy (DE # 146), requesting that her conviction be vacated.[1]

A § 2255 motion allows a person in federal custody to attack her or her sentence on

constitutional grounds, because it is otherwise illegal, or because the court that imposed

it was without jurisdiction. RULE 4 of the RULES GOVERNING § 2255 PROCEEDINGS

requires the court to promptly examine the motion. "If it plainly appears from the

motion, any attached exhibits, and the record of prior proceedings that the moving

party is not entitled to relief, the judge must dismiss the motion and direct the clerk to

notify the moving party." RULE 4(b), RULES GOVERNING SECTION 2255 PROCEEDINGS FOR

THE UNITED STATES DISTRICT COURTS.

On July 27, 2005, a jury found Doxy guilty of one charge of possessing, with

intent to distribute, "crack" cocaine base, in violation of 21 U.S.C. § 841(a)(1), and one

count of possessing a mixture or substance containing a detectable amount of

---

[1] Doxy's motion is only slightly different than one filed by her co-defendant, Jerome Gardner, on the same day. This opinion and order is, therefore, largely identical to the one disposing of Gardner's motion.

marijuana, in violation of 21 U.S.C. § 844(a). Doxy took a direct appeal, and her conviction and sentence were affirmed. *United States v. Doxy*, 225 Fed. Appx. 400 (7th Cir. 2007). Her petition for *certiorari* was denied on October 1, 2007. *Doxy v. United States*, – U.S. –, 128 S. Ct. 258, 169 L. Ed. 2d 189 (2007). Her § 2255 motion was timely filed within one year thereafter.

## I. Preliminary issues

Before addressing the merits of Doxy's motion, there are three preliminary matters to dispose of, a motion Doxy filed to amend her § 2255 petition, a motion for discovery, and a motion seeking appointment of counsel.

### A. Motion to amend

When the court first attempted to conduct its RULE 4(b) review of Doxy's motion, it discovered that several of her claims were too vague to review. It therefore directed her to file a supplemental statement providing more explanation. She did so on November 4, 2008 (DE # 161), filing a new memorandum (which Doxy calls an "addendum") answering the court's specific requests, and providing a better explanation of each of the grounds raised in her motion originally. Doxy also asked that she be allowed to add two new grounds to the six grounds she had initially raised: ground seven, a claim that her counsel was ineffective for not requesting voir dire to find out whether any of the jurors knew one or more of three "surprise" witnesses who testified on behalf of the government at trial; and ground eight, a claim that her counsel was ineffective for not requesting a continuance after the government called the three

"surprise" witnesses who had not been listed in the pretrial order. Doxy requests that she be allowed to completely replace the addendum attached to her original filing (DE # 146) with her amended addendum (DE # 161) containing the additional grounds.

A § 2255 motion may be freely amended as long as the amendments do not add entirely new claims after the one-year deadline for filing the motion has passed. *Rodriguez v. United States*, 286 F.3d 972, 980-81 (7th Cir. 2002); *Johnson v. United States,* 196 F.3d 802, 805 (7th Cir. 1999). Ground four of Doxy's initial motion framed the following issue:

> Whether the defendant was denied the effective assistance of counsel when her trial counsel failed to raise that the District Court abused its discretion when it failed to exclude the testimony of three surprise witnesses, after the government blatantly violated an [sic] pretrial order mandate by the district court?

The two grounds which Doxy wishes to add by amendment simply provide additional argument as to why she believes her counsel's performance was ineffective regarding the government's use of the three "surprise" witnesses. The rest of Doxy's amended addendum provides a clearer and more thorough explanation of Doxy's original filing.

Doxy's amendment will be allowed, and the memorandum/addendum attached to her motion originally filed (DE # 146) is replaced by the one filed on November 4, 2008 (DE # 161). The court will consider the merits of Doxy's additional grounds, and the discussion that follows speaks to Doxy's motion as it is argued in the November 4 memorandum/addendum (DE # 161).

**B. Motion for discovery**

The second preliminary matter concerns a letter written by Doxy to the Clerk of the Court, received on November 3, 2008 (DE # 160), in which she states that she wants to adopt a request made by co-defendant Gardner (DE # 158) for "lab request forms" from the Indiana State Police forensic crime laboratory, used by the Gary Police Department to request fingerprint analysis of evidence in this case. As explained in the court's order considering Gardner's § 2255 motion, the court has treated Gardner's request as a motion for discovery pursuant to RULE 6 of the RULES GOVERNING § 2255 PROCEEDINGS.

The background facts underlying Doxy and Gardner's desire to obtain copies of the lab request forms is this. At trial, Detective Irving Givens of the Gary, Indiana Police Department testified that a plastic bag containing a substance suspected to be crack cocaine, seized from the space between the center console and the passenger seat of the vehicle Doxy and Gardner were in immediately prior to their arrests, was sent to the Indiana State Police forensic lab for testing. In addition to testing to determine the composition of the substance in the bag, Givens requested that the bag be checked for fingerprints. Transcript of Trial, 2:05 CR 25 (DE # 106) vol. 3, p. 48 (hereinafter, cited simply by volume and page). To prepare for his testimony at trial, Givens called the lab and learned that the fingerprint analysis had not yet been done. Id. He testified that in

his experience, he had "never got a fingerprint off of a baggie," Id., p. 49, and the trial

went forward without any fingerprint analysis being conducted.[2]

When Givens disclosed that he had requested fingerprint analysis, defense

counsel immediately requested a sidebar, informing the court that this was the first

notice they had been given of that fact, indicating "to us that maybe there is something

pending out there that they just didn't want us to know about." Id., p. 52. The

government explained that it had called the lab only a day earlier learning that the

testing had not been performed, and decided not to ask for a continuance because of the

unlikely possibility that any prints would be recovered. Id at 51-52. In addition, while

the government presumed it had been in possession of a "property receipt"[3] showing

that fingerprint analysis had been requested and made an "error" by not giving the

---

[2] During cross-examination, Givens explained that he did not realize, until after the trial started, that fingerprint results had not been received. Vol. 3, p. 55. On re-direct, Givens reiterated that he could not remember ever getting fingerprints from a plastic bag, and stated that it did not cause him concern that fingerprint analysis had not been conducted. Vol. 3, p. 58. Givens' testimony was consistent with that of FBI Special Agent Mark Becker, who testified as an expert witness. Becker testified that "we"—presumably his division or section of the FBI—no longer even request fingerprint analysis of plastic bags containing suspected drugs, because of the lack of success in obtaining results. Vol. 2, p. 117.

[3] It is not clear, from reading the transcript, whether the Assistant United States Attorney is using the term "property receipt" to refer to the lab request form, or whether he means that his property receipt forms would show that he received a copy of the lab request form from the Gary Police Department. Whichever is the case, the distinction is not important to the present analysis.

defense a copy,[4] there was no *Brady* violation because there were no results and so no exculpatory evidence regarding fingerprints. Id. at 51. Counsel for both defendants moved the court to declare a mistrial, and that request was denied. Id. at 53.

Doxy's adopted motion for discovery seeks the "lab request forms from the Indiana State Police Laboratory" in order to determine whether or not fingerprint analysis was requested. (DE # 158). In order to obtain discovery in a § 2255 proceeding, a party must provide reasons which show "good cause" for the court to authorize it. Rule 6(a), (b); *see Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004) (discussing discovery in § 2254 proceeding.) Good cause does not exist when the facts alleged do not provide a basis for relief. *Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir. 1990).

The argument adopted by Doxy is that copies of the lab request forms from the Indiana State Police will allow proof of one of two things: either fingerprint analysis was not requested, which would show that the government knowingly used perjured testimony; or that it was requested, which would allow her to raise an ineffective assistance of appellate counsel claim.[5] Both of these contentions are without merit.

_____

[4] In this district, the government typically allows defense counsel "open file" discovery, whether or not disclosure is required by FED. R. CRIM. P. 16.

[5] It is clear that the argument refers only to appellate counsel only. Trial counsel did what was possible under the circumstances by requesting a mistrial, and Doxy (Gardner's adopted words) explains that the mistrial motion "clearly made this an issue for appellate review." DE #158, p. 1.

As to the first alternative, besides the possibility that Detective Givens could have simply been mistaken, a conviction obtained by the knowing use of false testimony will be set aside when there is any reasonable likelihood that the false testimony affected the jury's judgment. *Schaff v. Snyder*, 190 F.3d 513, 530 (7th Cir. 1999). Keeping in mind that no fingerprint evidence was introduced at trial—because there were no results available—the question whether Detective Givens might have lied, with the government's knowledge, about whether he did or did not request fingerprint analysis is so collateral to the material issues in the case bearing on Doxy's guilt that there is no possibility any such lie influenced the jury's verdict.[6]

The second alternative, that appellate counsel was ineffective for not raising on appeal the court's refusal to declare a mistrial, is equally untenable. The presumption that appellate counsel rendered effective assistance is outweighed only when he or she fails to raise "significant and obvious" issues that are stronger than those which were presented. *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985).

This court's refusal to declare a mistrial is so insignificant as to be a non-issue, making appellate counsel's decision not to raise the issue sound. RULE 16(a)(1)(F) of the FEDERAL RULES OF CRIMINAL PROCEDURE requires the government to disclose to the

---

[6] If it did influence the jury at all, such influence would have been in Doxy's favor. Both defense counsel argued, during closing, that the jury should draw negative inferences against the government for ordering fingerprint analysis, not ensuring that it was conducted, and then maintaining that it was unimportant. Such an obvious argument for the defense suggests how unlikely it is that the government would have knowingly used false testimony on this issue.

defense the "result" of any scientific test or experiment. Here there was no result to disclose. Likewise, the fact that a test was ordered, but not completed, is not exculpatory, meaning that disclosure was not required by *Brady v. Maryland*, 373 U.S. 83 (1963). Thus, the court did not err by refusing to grant a mistrial, and appellate counsel cannot be faulted for failing to pursue a non-issue.

For these reasons, the evidence Doxy wants to obtain would not provide support for any potential ground for relief. She has, therefore, not shown good cause to conduct discovery, and her request is **DENIED**.

### C. Motion for appointment of counsel.

On October 27, 2008, the court received from Doxy a "Motion by Defendant Requesting Adequate Representation," along with a request that she be allowed to proceed in forma pauperis. (DE # 157). Because the latter is unnecessary at this time, it is denied as moot. As to her request for appointed counsel, the court previously advised Doxy that it would address the request after it completed its preliminary screening of her motion. (DE # 159). Because the court finds herein that Doxy has not raised even a colorable claim that she received ineffective assistance of counsel, the interests of justice do not weigh in favor of appointing counsel, and her request is denied.

## II. Doxy's motion seeking to vacate her conviction pursuant to 28 U.S.C. § 2255

Doxy's motion is based entirely on an argument that she received ineffective assistance of counsel at each stage of her case: trial, sentencing and on appeal. The test to determine whether an attorney has delivered ineffective assistance such that a

defendant's Sixth Amendment right to counsel has been violated is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test has two prongs. First, the "defendant must show that the performance of counsel fell outside the 'range of competence demanded of attorneys in criminal cases'–i.e., that it 'fell below an objective standard of reasonableness.'" *Barrow v. Uchtman*, 398 F.3d 597, 603 (7th Cir. 2005) (quoting *Strickland*, 466 U.S. at 687). There is a strong presumption of competence. *Id.*

Second, the defendant must show that she suffered prejudice as a result of her counsel's ineffectiveness. *Id.* In other words, the defendant must demonstrate "a reasonable probability that, *but for* counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The court should deny an ineffective assistance of counsel claim if the defendant has made an insufficient showing on either prong. *Strickland*, 466 U.S. at 697. The court may assess the prongs in whichever order it chooses. *Id.* Additionally, though Doxy has made multiple allegations in support of her claim that trial counsel was constitutionally ineffective, it must be kept in mind that:

> [I]neffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed. Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief.

*Peoples v. United States,* 403 F.3d 844, 848 (7th Cir. 2005) (citing *Bell v. Cone,* 535 U.S. 685, 697 (2002); *Strickland*, 466 U.S. at 690; *Holman v. Gilmore,* 126 F.3d 876, 881-84 (7th Cir.

1997)). Thus, while the court addresses each of the issues which Doxy has labeled as "grounds" individually, it is counsel's performance as a whole that must be judged.[7] For the reasons that follow, Doxy's allegations, liberally construed and accepted as true, are not sufficient to raise even the suggestion that she received ineffective assistance of counsel, at any level of the proceedings.

## A. Performance of trial/sentencing counsel

As reorganized by the court for purposes of logical convenience, Doxy has identified five aspects of her trial counsel's performance which she believe fell below the necessary level of competence during trial, and one at sentencing. Two of the first five issues, regarding trial, pertain to counsel's response to the government presenting three "surprise" witnesses who were not disclosed prior to trial, and will be addressed together. As to sentencing, Doxy asserts that counsel was ineffective for not objecting to her being sentenced for possessing the "crack" form of cocaine.

## 1. Instruction on burden of proof

Designated as ground one of Doxy's motion, she argues that her counsel was ineffective for not objecting to Instruction No. 9 of the final jury instructions (DE # 72), which was erroneous because it:

> [F]ailed to instruct the jury that "If the Government fails to sustain its burden, you must find the defendant not guilty."

---

[7] Doxy has stated as her sixth ground for relief: "Whether the cumulative impact of the multiple deficiencies in the defendant's trial counsel's performance prejudiced the defendant." This is the method of analysis employed by the court herein, and so this ground need not be discussed further.

> The defendant contends that this instruction, unlike most of the suggested language in the various pattern instructions, is not optional. Therefore, the instruction in this case, given to the jury was clearly an [sic] structural error.

This argument finds no factual support in the record.

Instruction No. 9 was a near-verbatim (modified only so as to apply to two defendants and multiple charges) copy of Instruction 2.03, "Presumption of Innocence — Burden of Proof," from the Seventh Circuit Pattern Criminal Jury Instructions, and included the sentence: "The government has the burden of proving the guilt of a defendant beyond a reasonable doubt." In addition, instructions 17 and 19, setting out the elements of the two charges against Doxy, both instructed the jury that it had to find that every element had been proved beyond a reasonable doubt, and that if any element had not been proved beyond a reasonable doubt, it should find her not guilty. Last, final Instruction No. 29 was a near-verbatim copy of Instruction 7.06 of the Seventh Circuit Pattern Criminal Jury Instructions, and included the sentence: "Your sole interest is to determine whether the government has proved its case beyond a reasonable doubt."

The instructions accurately stated the law, and properly instructed the jury on the government's burden to prove Doxy's guilt beyond a reasonable doubt. Her counsel's performance cannot be faulted for failing to raise an objection pertaining to final jury Instruction No. 9.

## 2. Failure of jury to make finding on "crack" form of cocaine

As ground two of her motion, Doxy argues that her counsel was ineffective for failing to object to final jury Instruction No. 17, which allowed the jury to convict her without making any finding on a required element of the offense:

> [T]he District Court omitted the word "crack" (which is clearly an element of the crime charged) from both the Indictment and the instruction given to the jury on the elements it needed to prove to find the defendant guilty.

This argument is completely unfounded.

First, the indictment (DE # 16) charged Doxy with knowingly and intentionally possessing with intent to distribute "fifty (50) grams or more of a mixture and substance containing a detectable amount of cocaine base, commonly known as 'crack' cocaine, a schedule II controlled substance."

Second, expert witness Ivanyo, the Indiana State Police forensic drug chemist, testified that the substance seized from Doxy and her co-defendant was "cocaine base," known in street slang as crack cocaine. Vol. 3, pp. 88-89.

Third, in the final jury instructions (DE # 72) read to the jury, Instruction No. 8 explained that the first count of the indictment charged Doxy and her co-defendant with possessing, with intent to distribute, fifty grams or more of a mixture or substance containing "cocaine base, commonly known as 'crack' cocaine." This same language was repeated in Instruction No. 16, which set out the pertinent provisions of 21 U.S.C. § 841. Instruction No. 17, setting out the elements of the crime, stated that the jury had to determine, beyond a reasonable doubt, that Doxy possessed "cocaine base."

Instruction No. 20 stated that "cocaine base, commonly known as crack cocaine," is a controlled substance.

Finally, the jury returned a special verdict (DE # 70), finding Doxy guilty of knowingly and intentionally possessing, with intent to distribute, "crack cocaine base," and finding that "the amount of crack cocaine base involved" was fifty grams or more.

In short, the indictment, the instructions and the verdict form all accurately reflected, and ensured a jury finding on, possession of cocaine base, also known as "crack" cocaine, and there was no basis for her counsel to raise an objection.

### 3. Severance

Doxy's fifth ground[8] is that her trial counsel erred by failing to move for a severance based on the fact that she and co-defendant Gardner had mutually exclusive defenses. The backdrop for this argument starts with Doxy and Gardner's arrest, when Doxy exclaimed "it's mine," immediately after a police officer displayed to her a plastic bag of what turned out to be crack cocaine, which he had just found between the console and the passenger seat of the vehicle the co-defendants had been riding in immediately prior to their arrests. This statement came into evidence through the testimony of the arresting officer, and was admitted at trial as evidence solely against Doxy, who was driving the car. The bag was located next to Gardner, who was riding in the passenger seat. The arresting officers found that Gardner had both a scale and a

---

[8] The court refers to Doxy's arguments using her original numbering scheme, for convenient reference to her addendum.

large quantity of cash, mainly in $20 bills, in his pockets. The government's theory—which the jury agreed with—was that the defendants had joint possession of the crack cocaine.

Each defendant's trial strategy was to argue that the crack cocaine was solely in the possession of the other. Doxy's argument was that her "it's mine" statement referred to marijuana which had also been found, that the bag of crack cocaine was in the area of the car within Gardner's control, and that he was the one with the scale and the cash. Gardner's argument, with additional details not necessary to repeat here, was that Doxy's exclamation that the crack cocaine belonged to her at the time she was arrested proved that it was in her possession only.

Rather than a reason for severance, this type of finger-pointing weighs in favor of a joint trial: "The fact that it is certain that a crime was committed by one of two defendants is a reason for trying them together, rather than a reason against, to avoid 'the scandal and inequity of inconsistent verdicts.'" *United States v. Zafiro*, 945 F.2d 881, 885 (7th Cir. 1991) (quoting *Richardson v. Marsh*, 481 U.S. 200 (1987)). Pertinent to Doxy's ineffective assistance argument, the court in *Zafiro* remarked:

> We remind the defense bar that they are not obliged to make futile arguments on behalf of their clients. The argument that a conviction should be reversed because the district judge failed to sever properly joined defendants for trial is nearly always futile even when the defendants can be said to be presenting mutually antagonistic defenses.

*Id*. at 886. *Zafiro* was affirmed by the Supreme Court, which held that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial

would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Doxy has provided no argument that such is the case here, and her attorney's performance was not deficient for not requesting a severance.

### 4. "Surprise" witnesses

At trial, during the testimony of forensic drug chemist Kimberley Ivanyo, defense counsel objected when the government first moved to admit into evidence the marijuana (the crack cocaine would have come next) seized from Doxy and Gardner which Ivanyo had tested. The basis of the objection was that the government had not established a chain of custody, showing where the drugs were during the seven months between the time they were seized from the defendants until arriving in Ivanyo's hands at the laboratory.

Although a presumption of regularity attaches to evidence kept in official custody when a defendant has no evidence of tampering, and defects in the chain of custody go to the weight of the evidence rather than its reliability, *United States v. Smith*, 308 F.3d 726, 739 (7th Cir. 2002), the court told the government it needed to call a witness with personal knowledge that routine police procedures for custody of the evidence had been followed.[9] Vol. 2, p. 92. The three witnesses Doxy identifies as a

---

[9] The court did so primarily because there was no testimony establishing that the drugs had been in official custody at all times: no witness had yet testified from personal knowledge how the drugs were transported from the Gary Police Department to the Indiana State Police laboratory.

"surprise," Carlos Rivera, Fred Cook and Leonard Monroe, were called by the government to do just that. Officers Cook and Monroe were responsible for the evidence vault at the Gary Police Department, and Sergeant Rivera was the officer who took custody from Cook and Monroe and transported the drugs to the forensic lab.

As ground seven of her motion, Doxy argues that her trial counsel was ineffective for not requesting voir dire to determine whether any juror knew one of these three witnesses, which could have impacted the juror's ability to be fair and impartial. As ground eight, Doxy argues that her trial counsel erred by failing "to move for a continuance after the government introduced the testimony of three surprise witnesses[.]"

Taking the second of these two points first—that is, ground eight—Doxy states that the continuance was necessary so that her attorney could properly prepare for effective cross-examination. The problem is, she does not explain why her counsel's cross-examination of the witnesses was wanting, or posit any theory that should have been explored during cross-exam. Indeed, it is difficult to imagine what might have been done. The witnesses simply explained how the drugs had been secured in the evidence vault, and then transported to the Indiana State Police lab for testing. Speculation does not suffice to make a showing of ineffective assistance, and without some explanation from Doxy of the cross-examination that should have been conducted, she cannot show that her counsel's failure to request a continuance was an error, or has caused her any prejudice. *Cf. Hardamon v. United States*, 319 F.3d 943, 951

(7th Cir. 2003) (argument that counsel was ineffective for not conducting an adequate investigation fails when it does not explain what the investigation might have produced); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) (ineffective-assistance claim cannot be based on mere speculation that witness who was not called might have given favorable testimony).

As to ground seven, Doxy's contention that counsel was ineffective for not requesting further voir dire to determine if any juror knew one or more of the three additional witnesses, it is important to realize, as Doxy admits, she speculates that this might be the case, not that she has become aware of information suggesting that it is the case. The question therefore becomes whether the court should now take steps to learn whether any juror knew one of the witnesses, a prerequisite to Doxy being able to demonstrate prejudice, demanding additional time from 12 citizens who thought they had completed their jury servce nearly four years ago. The answer is plainly "no."

Doxy's speculation is unfounded based on the voir dire that did occur during the jury selection process. Each prospective juror was asked:

> Have any of you or has anyone close to you ever been connected with a law enforcement agency in any way? And what I mean by that is, as a law enforcement officer such as a sheriff, a police officer, an FBI person, DEA person, IRS person, those kinds of things.

Vol. 1, p. 26. In addition, each juror was asked: "Have any of you ever been acquainted with a law enforcement officer of any type whatsoever?" Vol. 1, p. 30. The jurors' responses to these questions were extremely forthcoming, several of them answering

one or both of these questions affirmatively, and the court conducted extensive follow-up questioning. In the end, only one person selected for jury duty admitted knowing, or having any relationship to a law enforcement officer, that being an ex-spouse who was an East Chicago police officer. No juror admitted having any relationship to, or acquaintance with, any officer employed by the Gary Police Department.

Although the three "surprise" witnesses were not identified by name during jury selection, this thorough voir dire made it unnecessary to do so when it became known at trial that they would testify. Conducting additional voir dire then would essentially have plowed the same ground, and so defense counsel's failure to request doing so did not deviate from an acceptable standard of professional competence.

Even were that not the case, the court can only conclude that Doxy would be unable to demonstrate that she suffered any prejudice. Were the court to undertake discovery now which revealed both that a juror knew one of the witnesses, and because of that knowledge, was biased in favor of believing that witness's testimony, that does not undermine confidence in the outcome:

> [E]ven where juror bias is shown, not every incident requires a new trial. "'The test is whether or not the misconduct has prejudiced the defendant to the extent that she has not received a fair trial.'"

*United States v. Bradshaw*, 787 F.2d 1385, 1390 (10th Cir. 1986) (*quoting United States v. Hendrix*, 549 F.2d 1225, 1229 (9th Cir. 1977) (*in turn quoting United States v. Klee,* 494 F.2d 394, 396 (9th Cir 1974)). The three "surprise" witnesses who now cause Doxy's concern were brief foundational witnesses only, who may not even have been necessary, see

*Smith*, 308 F.3d at 739, and not factual witnesses bearing directly on the issues relevant to Doxy's guilt or innocence. Putting their testimony aside, there was substantial evidence to support the jury's verdict. Defense counsel's failure to request additional voir dire is simply a non-issue, and not a basis for a finding that Doxy received ineffective assistance of counsel.

### 5. Failure to object to sentence for "crack" form of cocaine

As ground three in her motion, Doxy argues that her counsel was ineffective for not objecting to her being sentenced for possessing the "crack" form of cocaine, because "the question as to whether the drugs the defendant possessed were actually 'crack' or not was never posed to a jury, admitted by the defendant or proven beyond a reasonable doubt."

This argument is clearly disproved by the record. As is explained above in section II(A)(2) of this opinion and order, the indictment, the instructions and the verdict form all accurately reflected, and ensured a jury finding on, possession of cocaine base, also known as "crack" cocaine. In short, there was no basis for Doxy's counsel to object that she should not be sentenced for possessing the "crack" form of cocaine.

### B. Performance of appellate counsel

The only issue Doxy raises regarding her counsel on direct appeal, stated as ground four of her motion, is that her counsel should have raised an issue as to whether this court abused its discretion by not precluding witnesses Rivera, Cook and Monroe

from testifying, due to the government's failure to put their names on its witness list prior to trial. Pretrial disclosure of witnesses is not mandated, *United States v. Edwards*, 47 F.3d 841, 843 (7th Cir. 1995), and it was within this court's discretion to allow the witnesses to testify under the circumstances discussed above in part II(A)(4) of this opinion and order.

As stated earlier in this order, the presumption that appellate counsel rendered effective assistance is outweighed only when he or she fails to raise "significant and obvious" issues that are stronger than those which were presented. *Gray*, 800 F.2d at 646. The court's decision to allow the testimony of these three witnesses was not an abuse of discretion, and was not a significant issue that Doxy's appellate counsel overlooked. Doxy has made no showing that she received ineffective assistance of counsel on appeal.

## III. Conclusion

Doxy's request to amend her motion (contained in DE # 161) is **GRANTED**. As explained above, Doxy's motion for discovery (DE # 160, adopting DE # 158), and motion for appointment of counsel (DE # 157), are both **DENIED**. Because Doxy has made no argument that suggests that her counsel at trial, sentencing or on direct appeal rendered ineffective assistance of counsel, it "plainly appears from the motion . . . and the record of prior proceedings" that she is not entitled to relief, requiring the summary dismissal of her § 2255 motion. RULE 4, RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS. Accordingly, Doxy's motion pursuant to 28

U.S.C. § 2255 (DE # 146, as amended by DE # 161) is summarily **DENIED** and

**DISMISSED**.

The clerk shall **ENTER FINAL JUDGMENT** dismissing the collateral civil

proceeding (2:08 CV 283) with prejudice, and give notice to defendant-movant Doxy.


**SO ORDERED.**


Date: June 18, 2009


s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT